DONOHUE *v.* PIOCHE MINES CO.

No. 2849

June 4, 1929.

277 P. 980.

*F. E. Wadsworth,* for Appellant:

*A. L. Scott,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

The complaint alleges:

"That on June 5, 1923, at Pioche, Nevada, the Defendant made and delivered to the Plaintiff its promissory note of which the following is a copy:

" 'Pioche, Nevada, June 5th, 1923.

" 'Twelve months after date, for value received, the Pioche Mines Company promises to deliver to Ed. P. Donohue, Nine Hundred (900) shares of the capital stock of the Pioche Mines Company, par value $5.00 per share, or at the option of the said Pioche Mines Company to pay to said Ed. P. Donohue, the sum of Twenty seven hundred ($2700) and 00/100 Dollars in lawful money of the United States, payable at the Bank of Pioche, Pioche, Nevada.

" 'Pioche Mines Company,
" 'By [Signed] John Janney.
" 'John Janney, President.'

"That said note became due and payable June 5, 1924, but the Defendant has not paid said note nor any part thereof."

It demands judgment for 900 shares of the capital stock of defendant company, or in lieu thereof judgment in the sum of $2,700, with interest and costs.

To the complaint an answer and counterclaim was filed. The answer admits the execution of the document pleaded in the complaint, and alleges an agreement in writing between the parties extending the time for performance to January 1, 1925. The answer further avers that a writ of attachment was sued out by a partnership known as Pierce, Critchlow & Marr against the plaintiff in this action to recover the sum of $5,289.24, wherein this defendant was garnished, and that the same was still in full force and effect.

For counterclaim the defendant alleges that the plaintiff, for value received, made, executed, and delivered to the defendant his certain promissory note in the sum of $200 payable on January 1, 1925, without interest, which had fallen due and remained wholly unpaid.

The complaint in the action was filed December 15, 1926, and summons was served on the same day. The case was tried to the court on February 27, 1928.

There is no bill of exceptions in the record containing the testimony; hence the case is before us on the judgment roll alone.

The court found that the value of the stock of the defendant company was $5 per share; that the documents alleged in the complaint and counterclaim were executed as averred; and that the terms of neither had been complied with. It appears from the judgment roll that the attachment pleaded in the answer was dismissed prior to the trial of this case. The court also found that the defendant was entitled to recover judgment on its counterclaim in the sum of $200.

The court adjudged that plaintiff was entitled to recover from the defendant 900 shares of its stock, that the sum of $200 be set off against the judgment in favor of the plaintiff, and that the defendant deduct from the 900 shares of stock awarded to plaintiff 40 shares, and deliver to plaintiff 860 shares; and that, in the event of refusal, failure, or inability of defendant to deliver said

stock, the plaintiff in lieu thereof do have and recover of the defendant the sum of $4,300, with interest at 7 per cent per annum, and costs.

■ It is first asserted that in view of the attachment mentioned the plaintiff had no right of action at the commencement of the suit. In support of this contention our attention is directed to the case of Foulks v. Pegg, 6 Nev. 136. There is nothing in the case mentioned to justify the contention. The facts of that case are dissimilar from those in this. There the constable took physical possession of lumber under an attachment, which the court correctly said gave him a special property interest therein. In the attachment against plaintiff there was no change of possession. But if there had been, the result would be the same, since the attachment proceeding would have only created a lien; there would have been no change of title unless followed by judgment and sale. The dismissal of the attachment obviated such a possibility.

■ It is next asserted that the court erred in adjudging that the defendant deliver to plaintiff 900 shares of the stock, less 40 shares in cancellation of the sum of $200 due from plaintiff to defendant.

In this connection counsel for defendant directs our attention to section 5268, Rev. Laws.

In pursuance of this section, counsel insists that as to the counterclaim the court had no authority to render anything but a money judgment in favor of the defendant for $200. We cannot agree with the contention. Concerning a counterclaim it is said in 34 Cyc. 629: "A counterclaim is a claim presented by a defendant in opposition to or deduction from the claim of plaintiff. A species of set-off or recoupment introduced by the codes of civil procedure in several of the states, of a broad and liberal character, and embraces, as a general rule, both recoupment and set-off, although broader and more comprehensive than either, and secures to defendant the full relief which a separate action at law, or a bill in chancery, or a cross bill, would have secured him on the same state of facts. *    *    * "

We think it the purpose of the code provision authorizing a counterclaim to confer upon the courts in a proper case the broadest latitude, with a view of adjusting all differences and avoiding a multiplicity of suits. Such being the spirit of the law, we do not see how the court could have rendered any judgment in the case, under the findings, which are not complained of, except to apply the claim of the defendant to the reduction of plaintiff's demand.

█ We think, however, the judgment is excessive, as contended. The document sued upon fixes the amount of plaintiff's money demand at $2,700.

Furthermore, plaintiff sued upon that theory. The complaint does not allege the value of the stock. Having elected to sue upon that theory, and not having amended his complaint to present any other theory, and not now urging any reason in support of the judgment in the amount given, other than that the court found the value of the stock to be $5 per share, we would not be justified in sustaining the judgment in the amount for which it was rendered. As quoted approvingly in State v. Board of County Commissioners of Lander County, 22 Nev. 71, 79, 35 P. 300, 302: "It may accordingly be laid down as a broad proposition that one who has taken a particular position in the course of a litigation must, while that position remains unretracted, act consistently with it."

It is ordered that the trial court modify its judgment in accordance with the views herein expressed, and, as so modified, that it stand affirmed.

DUCKER, C. J.: I concur.

SANDERS, J., dissenting:

The complaint is based upon the written contract set out in the opinion. By reference to the contract, it will be observed that defendant promised to deliver to plaintiff 900 shares of its capital stock, par value $5 per share, or, at the option of the defendant, to pay to the plaintiff the sum of $2,700 at the Bank of Pioche. The defendant did not choose to exercise its option. Therefore, its promise to deliver the stock became absolute

regardless of its value. I do not conceive that the complaint is based upon a money demand. The prayer of a complaint is no part of the cause of action, and, where an answer is filed, the prayer becomes immaterial. Kingsbury v. Copren, 43 Nev. 448, 187 P. 728, 189 P. 676; Sugarman v. Morse Bros., 50 Nev. 191, 255 P. 1010, 257 P. 1.

Upon the trial of the case the court determined and fixed the value of the stock at $5 per share. With all respect, I cannot subscribe to the reduction of its value to $2,700 in the event of the failure, refusal, or inability of the defendant to deliver the stock as ordered by the court.

### ON PETITION FOR REHEARING
August 9, 1929.

By the Court, COLEMAN, J.:

A strenuous petition for a rehearing has been presented. Both the petition and the reply thereto discuss much that is not in the record and which cannot be considered.

We will first dispose of the contention that the appellant did not complain that the judgment is excessive.

It is true that counsel for appellant did not use the word "excessive," but the only inference to be drawn from the language used in his reply brief is that such was his contention. He alluded to the fact that the question of the value of the stock in question was not alleged in the complaint and hence not an issue in the case.

He argued that the 900 shares of stock to be delivered to the plaintiff was attached in a suit pending against the plaintiff, because of which the defendant could not make delivery. After considerable argument along this line it is said in the brief: "This defendant is entitled to an opportunity to pay without penalty this obligation after the attachment had been duly dissolved. * * * The additional purpose of this appeal is to permit this appellant to collect a $200 promissory note. * * * "

Thus it appears the appellant was asserting two grievances—one the right to pay without a penalty,

and the other relative to the $200 pleaded in the counterclaim. What could appellant have alluded to as the penalty except the difference between the $2,700 mentioned in the document sued on and the sum of $4,500 for which judgment was rendered, less the $200 for which counterclaim was asserted? We think appellant was complaining of an excessive judgment.

There are no allegations in the complaint from which we might infer that this is an equitable action or which could confer jurisdiction upon a court of equity.

We disposed of this matter in the first instance, not on our idea as to what kind of an action should have been instituted, nor of the allegations necessary, but upon the record as we found it and upon the points urged upon appeal.

Both the petition and the reply refer to matters dehors the record, which cannot be considered.

The petition is denied.

SANDERS, J.: I dissent.